Next case is number 2011 1248 NRELG ELECTRONICS, Mr. Shumsky. Good morning, Your Honors, and may it please the Court, to affirm the decision of the Board here would require embracing the absolutely counterintuitive notion that the Whipple claims in reexamination are anticipated by what is undisputedly the same basic technology that Mr. Whipple improved upon and expressly distinguished in the specification of his patent. In 1989, when Whipple filed the application, he said in plain terms, there's prior art out there. It includes these token passing systems. I'm not that. I've got something better and new and different because there are problems with that technology and I've solved them with my invention. Counsel, at page 37 of Appellant's brief, you state that the Board failed to consider prosecution history. Is it your position that contemporaneous arguments made during reexamination are prosecution history? It is our position, Your Honor. Okay, go ahead and explain that, please. Well, I want to make clear at the outset, if I may, that we're not relying exclusively upon that. And as I was saying a moment ago, we think that the disclaimer that appears in the specification at A47 of the appendix is an easier way to decide the issue. But turning to the prosecution history where the patentee made the exact same arguments that are reflected at A47, the simple fact is that statements that are made during reexamination are given binding effect in a variety of circumstances. Indeed, in just about every circumstance which we've been able to identify in the patent domain, a statement made by the patentee that constitutes a clear disclaimer will be given effect. And that's true of statements in prosecution. Later in reexam, it's true of statements that are made during the reexamination for purposes of district court litigation, of ITC litigation, and vice versa for each one of those circumstances. And it seems that would be quite an anomaly to conclude that a statement made during reexamination that would be used to limit the claims in any other context should be ignored simply because the relevant venue for considering the meaning of those statements is in the reexamination itself. Are you saying that you can alter a claim or achieve a new claim in the process of reexamination? Well, our argument here is not that anything has been changed or altered. This is simply a question of claim interpretation. And the court said in Phillips, among numerous other times, that prosecution history is relevant for interpreting the scope of the claims and that a disclaimer, and that's what we're talking about here, is normally given effect. Phillips is actually quite stark about this. So you're not relying on whether or not there was or could be an amendment to the claim? Correct. And the claims here had expired. I mean, it's important to in which these patents, this patent was issued in 1991. It has been litigated and licensed exclusively for a period of nearly some two decades. And three months before expiration, a third party initiated an ex parte reexam. And so the proceedings that are at issue here are all dealing with an expired patent. And importantly, we're not talking about the or the examiner will get the broadest reasonable construction. This is just straight up claim construction under Phillips. The usual Phillips principles apply. And I don't think there's any dispute between the parties about that. Ex parte Paps Motoren is the relevant, sort of the principal authority of the board on this issue, and both parties have pointed to it. And notably here, and turning back to the disclaimer issue, ex parte Paps Motoren says that where you're dealing with expired claims, the claims should be construed narrowly to preserve their validity. And so we assume then that any restricted construction which ensues would then be relied upon in some infringement retrospective action. I think that's exactly right, Judge Newman. And I think that's why going to your question, Judge Wallach, this really would be anomalous to conclude that you can ignore these statements in the course of the reexam. Statements made by a patentee are generally held binding. And when they're made in the course of the prosecution or reexamination of the patent, Rule 56 imposes duties of candor on the patentee in his, her, or its dealings with the PTO. And there's good reason to give these statements a fact. They cut both ways. They can hurt, they can help, depending on whether you're talking about infringement or invalidity, but they're significant, and that's why they're treated as part of the intrinsic evidence. They serve a public notice function, and they tend to be relied upon. But again, I want to emphasize that our view here is not that our case rises or falls on whether this court concludes that the statements made in reexam can or should be given particular effect. It seems to me that the much easier way to do this is based on the clear statements in the background of the specification itself. Could you, could you address the, the, what I think is one of the central issues, if not the central issue in the case, and that is the granting of priority and the differences between the, the patent, your patent and the prior art with respect to assigning or granting of priorities. Certainly, Your Honor. Let me try and do it in, in practical terms in the context of a particular example. And in the briefs here, what's typically been used, and this is the same in, in some of the, the patents as well, is sort of a stylized depiction. And commonly we'll show a bunch of nodes or devices arrayed around a shared communications medium or bus. And I think it's important to remember that in Whipple it's not necessary that they be circular. That's one preferred embodiment. And Whipple actually says you can have all kinds of other different configurations. But so for present purposes, let's assume we're talking about a bunch of devices around a circular bus and they have priorities. In Whipple, they'll be assigned priorities. So let's say arbitrarily node two has the highest priority. What will happen in Whipple, and the easiest way to see this is to look at claim 15, which is the method claim, is that a request will be received for access to the bus. One of the nodes or devices says, I need to access the shared communications medium. So that's the first step in the method. The next step, and this is probably the most important one for purposes of these discussions, is a determining step. The invention determines whether any node with higher priority is requesting access. So in our example, we said that two has the highest priority. So let's say that three and eight both ask for access at the same time. What the invention will do is determine which has highest priority and then working in conjunction with the determining step is the next one. If no such node, meaning if no node with higher priority has requested access, the one that initially asked for it will get it. So in our example, three has the highest priority. Three is the one that gets access. Let's assume a very similar type of configuration, but in a Stoffel-style invention, right? Stoffel is the token passing system. And the way one of those works, and this is the same prior art that is discussed and disclaimed in the background of WIPL, is whoever has the token gets access. So in our example, we said that two has highest priority, two's got the token, and it just starts passing it around and around and around the circle. Two passes the token to three, three to four, four to five. So let's say it's while node five has the token. Again, eight and three ask for access. Now what happens at that point? First of all, nothing. And this is one of the critical aspects of WIPL. WIPL says that one of the problems out there is you have to wait. You have to wait for this token to get to whoever's asking for access. And Stoffel actually says this. It says column nine, line nine, a node waits its turn to receive the token. But in the end, even in the invention, the other nodes have to wait until the particular node that has access at any given moment has relinquished access or access or no longer requires access. So what's the difference? Well, there are several differences, Your Honor. So let me start back with the question of priority. But Stoffel teaches priority. Well, Stoffel doesn't teach priority in this sense, certainly not explicitly. The only time is to talk about a round robin being equal priority, which is the antithesis of WIPL. WIPL's whole point is to assign relative priorities. Remember that in the claim language, you've got to have higher priority, highest priority, and relative priorities. Stoffel shows that if a node is next in priority and it's not seeking access, the token that it has automatically skips over to the next one. Correct. That's teaching priority, is it not? Well, I don't think so, Your Honor, and for a couple of reasons. First of all, that's not what the board said. If you look at A12 and A21 of the appendix and the discussions following that, the board thinks about priority and Meenot and Stoffel the same way that I just articulated in terms of WIPL. Priority starts with our hypothetical node two and everything below that has lower priority. And so at a minimum, if you thought that you had to read the claims in that way to affirm, you'd have to vacate and remand because that's not what the board said. But what Stoffel says is nodes that simultaneously seek access will be granted access based on receipt of the token. That's the mechanism in which it prioritizes. Right. So then this gets to my second point, which is that clearly Meenot and Stoffel don't teach priority, at least explicitly, in these terms. The only time they use priority is in talking about something very different, right? So now we're in the world of inherent disclosure, right? We have to read into Meenot and Stoffel something that the board didn't say was there, something that Meenot and Stoffel don't say, at least in those terms, is there, and to assume that that's what's happening, in fact, in Meenot and Stoffel. And this is where, at least in Claim 15, the determining step that I focused on in my answer to Judge Rayna becomes so important. There is no determining going on in Meenot or Stoffel. The whole point of WIPL, and this is reflected in the disclaimer where I started, but frankly, is the inherent and most necessary feature of the invention is the assignment of these relative priorities, and then a determination at any moment which among the ones asking for access at the same time has it. There is no determining like that that occurs in Meenot or Stoffel. There simply is. There is whoever's holding the token at a particular moment, and the token goes around and around and around and around until someone gets it who's asking for it. I see that I'm way into my rebuttal time, and I've not addressed the crash preference. Continue to answer the question. We'll save your rebuttal time. Thank you, Your Honor. So it seems to me that's the essential feature, and that's the essential difference here. And even if you concluded that that weren't plain on the face of the claim language, when I go back to where I started again, that's where the disclaimer is so important here. This Court has said again and again and again, not only in Phillips, but in Tronzo and Ecchi and in Symed, in case after case after case, where a patentee has said, that's not what my claim covers, that disclaimer will be given effect. Phillips says it will be regarded as dispositive. And to me, again, that seems the simplest way to resolve this matter. I do, if there are no further questions about Minot and Stoffel, want to turn at least briefly to the Kraft reference, if I may. Okay, please do. So on the Kraft issue, I want to make three essential points. Now, you haven't addressed really the Minot prior art or the Minot prior art, and really that's the one that's giving you the biggest problem, right? I don't think so, Your Honor. I mean, there has been no assertion, and I don't see any relevant difference between Minot and Stoffel. They were treated essentially the same in the board. Minot gives you anticipatory problems, and Stoffel gives you both. And perhaps I'm not following the question, Your Honor. I mean, the board and as I read the Director's briefs, and certainly we have all understood that token passing regimes and present purposes, and we've cited in our briefs, I mean, there's language both in the board and in the Director's brief to say that you can treat these essentially similarly. The only difference between them, to be specific, is that in the token passing system, you've got a token, and the token's going around and around and around, two to three, three to four, four to five. The only difference with the polling system is that you've got a controller saying seriatim to two, then three, then four, then five. Do you want access? Do you want access? Do you want access? Do you want access? And so in terms of understanding priority, and Minot has exactly the same problems with teaching or disclosing priority, Judge Wallach, that I was referring to you with you a moment ago, Minot is functionally similar. Does that answer the questions for the moment? For the moment. Well, if there's anything else, let's take the time to pursue it, so that the government will have a chance to respond if need be. Okay. What about, then, turn to Kraft, okay. Because your problem there is that two, three, three, you're obvious. Correct, Your Honor. Okay. Right. And so I'd like to make three essential points about Kraft, two procedural and one substantive. First, as you'll recall from the briefs, we've focused on two different elements or aspects of the claim language in Kraft. There is the a device limitation, right, whether priority is shifted in response to accesses by a device as opposed to a group of devices, and then there is the in response to limitation. So, taking the a device claim language first, the examiner's basis for rejection was that Kraft, in fact, teaches shifting priorities in response to accesses by a device. It's an anticipation style rejection. Kraft actually teaches this element. The board said that was wrong. That's at A28 of the case. There's no dispute about this. Both sides have agreed that the board said that the examiner was wrong about this. The board, however, goes on to affirm on an alternate basis. It says, well, even if Kraft doesn't teach a device, it teaches a group of devices and it would have been obvious to shift it over. It is absolutely clear under a series of this court's decisions in In re Stepin and In re Latham and In re Kumar, among others, that the board cannot affirm on an alternate basis that wasn't present in the examiner's initial rejection. That in and of itself is a sufficient basis to vacate this aspect of the rejection. So, that's the first point. Second point, also on the same claim language, the rejection and the nub of it is that A28, again, in the board's decision, boils down to a one-sentence, bare assertion. KSR, citing this court's decision in In re Khan, says that reasons must be given. You have to articulate why a combination or a and what it says is the following. Kraft, and this is where the board disagrees with the examiner, Kraft is clocking the group of devices, but the reason it's doing it is it wants to make sure that one of them is able to communicate, right? So, if you look at A28, the precise language is Kraft aggregates the time to ensure that at least one busmaster can transfer data efficiently during the time allotted. Kraft absolutely does not say that. This is the worst kind of hindsight reconstruction that this court has said over and over and over again is impermissible. Nothing in Kraft says that that's why the aggregation is done. So, that's the second point. The third point, again, is a procedural one, and this relates to the in response to argument. We've made two separate arguments based on two separate bits of claim language. Either one of them, if you agree with us, is sufficient to vacate or reverse the decision of the board. On the in response to point, the government has provided no argument. The director's brief does not address this issue at all. Now, I don't know whether this is a on an argument where the director hasn't defended the board's rationale. Now, we've argued substantively why we think that that aspect of the rejection is wrong. If we find that the invention was anticipated by Menard, do we even have to get to Kraft? I think so, Your Honor. The way I read the board's decision, these are two separate bases for rejection, and so each of them would need to be reversed or vacated. All right. Let's hear from the director, from the solicitor. We'll take a little bit of time. May it please the court, Your Honors. Mr. Lamarcus? The first point I'd like to get to is the first point raised by LG's counsel, is that they've asserted that there's a clear disclaimer in the specification. Let's look at that specification. The government's view, and if you look at it, it's not a clear disclaimer of our prior art that's been cited. It's a clear disclaimer or an attempt to overcome other prior art, prior art that's different than the prior art that we cited against them in the rejections. For example, at page 847, which LG cites, it says that the other prior art that they're talking about is token-passing systems. That's true, but that are static, static anchor nodes where hogging is a problem. That's what they came over, overcame. They didn't come over our prior art. Our prior art's not static. Our prior art doesn't, it prevents hogging. It doesn't have a hogging problem. What they're talking about there is static. You pick a top node, a priority node, and it stays the priority node, and it keeps priority forever and ever and ever, and it can hog access to the bus. And they said that type of token-passing system, that type that exists there, we've priority that the government cited, Minnow, Stoffel, and Kraft. In all three of those references, we don't have a hogging problem. We have priority. We pick a particular node that gets priority, whether it holds the token or whether it becomes what you call a master node. Whatever you phrase it, one node becomes a priority node, and if that node requests access, it gets access to all the other lower priority nodes. Now, if that particular node that has priority does not want access, and another node does want access, it skips over that node, and it gives access to the other lower priority nodes. All three of the prior art references cited by the government perform that function. That is different than what was talked about in the specifications, static priority or hogging. So let's just clarify, there has been no disclaimer or overcoming of the prior art that's been cited, because that's different than what's in their spec. Now, how do you respond to your opponent who says that what's really critical to the invention is that priority is dynamic? And what you're describing in the prior art, I guess you could say it's dynamic, but is it really? Yeah. I understand your question, Your Honor, and we would argue that to the extent that the is just what I just explained, is that a particular node is selected as the top priority node, and then it gets priority for a limited time, for a limited number of accesses. It doesn't get priority forever, and then at some point when that time expires, priority gets rotated to the next node in line, and it changes, and it allows each of the nodes in the system then to at one point or another be the top priority node. For example, LG brings up that there's teachings of, quote, priority. He mentions that with respect to the Minnow reference and with respect to the Stoffel reference, I believe. Well, what they're talking about is equal priority. Not that all nodes always have equal priority. What they're talking about is each node has an equal chance to be the top priority node. That is what they mean when they say equal priority. So that just means there's five nodes, and at one time or another, all the five nodes can be the top node, but not gets to hog the priority, and that's exactly what they've distinguished in their specification, and we agree that the claims of this invention are different than what's distinguished in their background of their invention, but it's not different than the references that have been cited against it. Minnow, Stoffel, Kraft, all teach rotation of priority. They all teach a top priority node gains access if that top node wants it over the other nodes. They all teach that a top priority is not requesting access because it can skip over, and they also all teach what we call timeouts or limited access points where the top priority node will only have a certain amount of time or a certain number of accesses, and then it relinquishes that priority to the next node in line. Those are all of the features of the claimed invention, and if you look at the claims, and you read right down on the inside cover of our brief, Your Honor, the red cover, you'll see Claim 12 and Claim 15, and you go through each of those steps, and they're primarily functional language in these claims, and all that they require is what I just recited, a group of nodes, and if you look at Claim 12, that's particularly illustrative because a group of nodes in a circular configuration, which is a little more narrow, but that's exactly what our prior art has, a group of nodes in a circular configuration where priority rotates in sequence around the circle of nodes. So we would disagree with that. The functional terms of the specification, unless the structure is identical, you still don't have anticipation, do you? You could argue obviousness. Well, I would argue that our structure in our prior art is either identical or equivalent of what's claimed in the claims. For example, the board... Well, you could argue, but in terms of the determinations that were made, which are before us, we don't have such determinations. Your Honor, the board did make a finding on this point. In fact, if we go to page that you've raised, if you go to page A11 and A12 of the board decision, at the bottom of A11, I'll take you to that footnote, and you see at the bottom of A11, footnote four, the board acknowledges that this is a 112-6 paragraph claim, which means we have means for performing a function, and then we have functions, right? And they say, look, the appellant does not present arguments asserting lack of structure. In other words, the means for performing, the determining the priority structure. So there's no dispute that the structure disclosed by the You're talking about anticipation by equivalency? Well, anticipation of a 112-6 paragraph claim, Your Honor. By equivalency? I don't think that's the law you could argue, obviously. Well, Your Honor, 112-6 paragraph requires that we have a structure disclosed in the spec that is either the same as or equivalent of... Precisely, but anticipation requires that it And I think the prior art satisfies that requirement to the extent these claims require it, Your Honor. It does do it by equivalency, by obviousness. In fact, if you go further, Your Honor, to page 12, no, under anticipation, Your Honor, and let me, if you let me finish, page 12, while claim 12 was not separately argued, it was a dependent claim, it implies what satisfies the determining means of claim 11. That is, claim 12 recites that the determining means is a, quote, a circular configuration of where the priority of a given node is determined by the node's position relative to the highest priority node. That is exactly, that is identically what we have in the prior art, Your Honor. We have that identical structure for determining priority. So it does match, and we do think there's adequate fact findings in the records to support anticipation. So that's the board's dealing and board's fact findings on that issue. So that was the first point. And in regard to arguments about prosecution history estoppel, and arguments made during the prosecution of a re-exam, we pointed out in our brief that we agree it's an expired patent, and an expired patent cannot be amended because an amendment to an expired patent would be useless. There's nothing in the future. Accordingly, if they make arguments now in a re-exam with an expired patent and they say, my arguments effectively narrow the interpretation of these claims, we don't think that by itself is enough. We think if you want to say that there's a disclaimer or a disavowal of claim scope, you're going to have to show us that that's been clear and unambiguous. And as I pointed out earlier, when you look to their own spec, their own spec is not a clear disavowal other than it's distinguished other prior art that's not our prior art. And furthermore, which I'd like to mention before I ask for any final questions, is in their own spec, if there's been a disclaimer or a clear disavowal by embodiments that have been disclosed, it's completely inconsistent with their own statements in the spec. The specification itself says at page A57, the present embodiments are to be considered A57, your honor, column 22 at lines 28 through 35. Column 22, lines 28 through 35, A57. You see that, your honor? Thus, the present embodiments are to be considered in all respects as illustrations and not restrictive. The scope of the invention being indicated by the appended claims rather than the foregoing description. So what they're saying in that paragraph is that you need to look at our claims for the breadth of our invention. You shouldn't be looking at our embodiments as restrictive of our claims. And that's exactly inconsistent with the argument that they're making that they've done this disavowal or this disclaimer. That's not clear and unambiguous and that's what the law requires, your honor. Well, that's very interesting. I've always, you know, we've seen that identical boilerplate in probably six or seven million patents. And now you're telling us that for the first time, we should apply it. I understand, your honor, that it shows up in a lot of patents. And the reason applicants put it in a lot of patents is because when they're later on involved in an infringement suit, they don't want their claims to be read as narrowly as their specifications disclosure or as a specific embodiment. They put it in there for the exact reason that they want their claims to be read with greater breadth than the embodiments that have been disclosed. Yes, it's in a lot of patents. Perhaps they're entitled. I'm not saying they're not entitled to do it. But what I am saying is you can't stand up here at the same time and say that I've had a clear disavowal of claim scope when you have statements like that in the specification that are inconsistent. That's not unambiguous, which is what the disavowal and the disclaimer doctrine require. Unambiguous means crystal clear. I'm disavowing claim scope. That is not a disavowal. That's the exact opposite. That's saying my claim scope is broad. What's interesting is here we have a situation where the position of the office is you can't change your claims anymore. Other than that, this question, after all these years, really doesn't arise. I'm not sure if I got the question 100%, your honor. I'm saying that they can't. They're prohibited, I gather, is the office's position from making any change, any specific change in the scope of the claim. They can disclaim, I gather, is the position of the office, but can't revise the claims because it's too late. Right. In an ordinary reexamination where a patent has not expired, yes, they can amend the claims. They can amend them. They go through the prosecution and the reexam. When the reexam ends and a certificate issues with the amended claims, they've done that. Here, since the claims have expired, since the patent has expired, you cannot amend the claims either expressly or... Why not? The reason is because when a reexamination certificate issues on an expired patent, if there were an amendment, let's just say we were allowed to allow that, that amendment would only apply in the future. It wouldn't apply to the past. If it's an expired patent, there is no future. So that's the reason why fundamentally an amendment to the claims makes no sense in the context of an expired patent, Your Honor. But what's being litigated would, in theory, apply to the past. If the issues are as to how to apply the patent against an alleged infringer, we're talking about the past for the very reason you mentioned, the patent is expired. And we don't disagree 100%. So you could either take the position that we will not reexamine an expired patent at all. I gather you tell us, and that's what I hear you saying, since you can't achieve any of the benefits of reexamination or disadvantages either way. Respectfully, Your Honor, that's not 100% true. We do reexamine expired patents. Our rules allow us to examine it, reexamine an expired patent. As soon as you tell me I can't make any changes, it can only hurt you. It can't help you. No, I'm not saying that either. You can engage in the reexamination of an expired patent. During that reexamination, you could still get those claims confirmed if you went through that whole reexamination process. Then after that process, take that reexamination certificate back to district court, and you could use that for the past infringing activities that you were dealing with. What you can't do... And what is your authority for this statement you've just made? In our... you mean that we can still... that we reexamine expired patents? Well, our regulations permit it, and the reason that they permit it... Is that the authority? Is the office regulating? Well, I think what they... Or rule, I guess. They don't go through notice and comment. There's a rule that says that we reexamine the expired patent for the period of unenforceability. I think the basis for that, though, is that a patent is enforceable, I believe, for up to six years after it's expired. In other words, there's a six-year statute of limitations upon which a patent owner can sue on a patent. So even though the patent is expired, up to six years later, they could still file a lawsuit accordingly. Only for infringement before it expired. Agreed, Your Honor. Agreed. Not for anything that happens after the reexamination. Agreed, Your Honor. But nevertheless, since the patent is still enforceable for that period, the Patent Office then will reexamine that patent during that period of enforceability. What the Patent Office will not do is it will not enter an amendment during that period. That's what it won't do. And the reason it won't enter an amendment is because an amendment in the future would be useless. Because amendments are not applicable to the past. They're only applicable to the future. So that's the reason for the procedure at the agency. That's kind of the logic on why it's set up that way. And I think we cited the actual rule in our brief if you wanted to look at the specific rule. But this issue is really not in dispute in this case. The dispute between the parties here really relates to whether or not the rejections that were made by the examiner and affirmed by the board, whether or not this court should affirm those rejections. And as I pointed out to you, we believe the Minot reference anticipates, we believe the Stoffel reference anticipates, and we believe the Kraft reference renders it obvious. If we find that the Minot reference anticipates, then do we need to get to Kraft or Stoffel? I don't think you have to because it anticipates all the same claims. I think it's the claims 11 through 17 that are at issue here. And that's the same claims that are at issue with Stoffel and with Kraft. So if you affirmed on Minot, you wouldn't need to reach Kraft or Stoffel, Your Honor. No. And if you didn't affirm on Minot, then you could look at the other ones. So they have not one hurdle. They have three hurdles to jump over. They have to jump over Minot. They have to win on that. They have to win on Stoffel, and they have to win on Kraft. There's an awful lot of evidence, far more than substantial, supporting the agency's decision to reject these claims, Your Honor. And we respectfully ask that the court affirm this. Are there any further questions? Yeah, I do. I'm sorry. On the discussion of Kraft, Mr. Chomsky said that the board cannot affirm on an alternative basis, and I want you to discuss that. Right. Well, first of all, we don't agree that the board affirmed on a basis different than the examiner. If you look at the board's decision, I think the page that he cited was... Let me go to that page. I think that was page A27 and 28. If you read through those pages, I don't want to drag you through them, but if you read through those pages, what you'll see is the board does cite the examiner's answer numerous times. And if you look at the examiner's answer, and you look at what the board found, I don't read that the board there is saying, we disagree with the examiner. They're basically supporting the examiner and further supporting what the examiner did. They're certainly quoting him. Right. But you're not saying that the board, even though they view it as an alternative basis, if it wasn't raised during prosecution, that the board must remand rather than affirm on that theory. Yeah, and I'm not disagreeing with this court's precedent on new grounds of rejection. And I think the argument from LG is that, hey, the board came up with a new grounds of rejection here, and they're not allowed to do that procedurally, and therefore there's a flaw. My response is A, it's not a new grounds. And B, let's say it were arguably an alternative new grounds. I don't remember seeing that in their opening brief. It's in their reply brief, but it's not in their opening brief. If they haven't raised it in their opening brief, it's waived. So that's my response to that. If it's raised for the first time in your reply, they're entitled to answer. Understood. But he's not alleging that it's raised for the first time in our reply. But that's accurate, is it not? It was discussed in your reply. But I don't think we ever said that this was an alternative grounds in our red brief, Your Honor. You didn't defend it for its alternative grounds? Absolutely we didn't, Your Honor. We defended it, and we defended the board's determination as supporting the examiner's rejection. That's how we defended it. We never, ever mentioned it as a new ground or took it to position as a new ground. And Myra's point is that it's not a new ground, but even if there was some truth to that, he didn't raise it in his opening brief. He raised it in his reply brief. That's a waived issue. That's the point I'm trying to make. Well, if he waived it, then you had no business talking about it. And I didn't want to talk about it until he brought it up. What we affirmed, Your Honor, is what the board did, and what the board did was confirm the examiner's rejection. That's my response to that question. I asked the question. Yeah, absolutely. No, I asked that question of him. He didn't really raise it. I did. So, I tried to answer your question, Your Honor. I didn't mean that Mr. Parker had raised it. I meant the board in its reply. Yeah, and I think your point was that we did defend it in our red view. The board hasn't really put in a new grounds of rejection. In our view, the board's consistent with what the examiner did. Is there any further? Mr. Shumsky, you have your rebuttal time. Thank you, Your Honor. I'd like to begin with the disclaimer issue because it seems to me that we've gotten to the nub of the dispute, and there are at least two absolutely clear reasons why we must prevail on this issue. My friend on the other side said that if you look at page A47, what we were disclaiming is something different than the prior art that the examiner relied upon, and he points to static priority systems. I would urge you to look at column one and two. The middle long paragraph talks about static priority systems. We indeed disclaimed those. Then at the paragraph that begins at the bottom of column one and carries over onto column two, we say there's something else out there too, token ring systems. That's maybe a little better than static priority systems, but it's got its own problems. We've got something better than that also. So it is simply not correct to say that Whipple was only disclaiming static priority systems. That's the first point. Second point, to the extent that the director's argument now is that the references, Meenot Stoffel in particular, are different from what was being disclosed in what I was just referring to in It is not a finding of the board, and in fact, it is not an argument that the director made until this oral argument. If you go back and you look at the decisions below and at the briefing, what the board said and what the director has argued, and they've also argued this again now, this is all just a preferred embodiment. You're just disclaiming, you're just talking about a embodiment. This is the background of the invention and the summary of the invention and a broad discussion of what was out there previously and what we improved upon. So to the extent the director is arguing now that there is some difference between the Shima reference, which is what's discussed specifically on A47, and the Meenot and there is no finding by the examiner or by the board, and it therefore cannot be raised here for the first time under SEC versus Channery and this court's decision in In-Rae Sang-Soo Lee, and also under the decisions that I referred to previously, Stepin, Kumar, and the like. So if that's what our dispute here has narrowed to, it is absolutely clear what the answer must be with regard to this disclaimer. Turning to the issue, Judge Wallach, just briefly of the prosecution history disclaimer and the question you raised at the outset, I neglected to point to one important piece of authority, and that's Section 2258 of the MPEP. There was a lot of discussion of the PTO's own rules. The PTO's own rules say that during re-examination, you need to look at admissions, and the language is actually quite stark. I don't have it in front of me, but the MPEP essentially says if you fail to do that, you can't possibly understand the prior art. I want to turn just very briefly to the general discussion of Meenot and Stoffel, the suggestion that we have three hurdles to clear, and this goes to your question earlier, Judge Reyna. I think it's really two hurdles for the reason I was saying. I still haven't heard an argument about why there's any difference between Meenot and Stoffel. There wasn't one in the papers, and there hasn't been one here today. There was also a suggestion that the substantial evidence standard applies here, and I want to be quite clear about this. Almost everything that's been discussed here is about interpreting the claims of Whipple. It's what the language of I focused on. It means it's the if clause that follows the determining language, at least in Claim 15. That same if language appears over in Claim 11. That's a question of claim construction, and it's reviewed de novo, and almost nothing, not nothing, but almost nothing in our argument turns upon an understanding of the scope and content of the prior art, which would be a fact question that would be reviewed for substantial evidence. Let me turn just very briefly to the and I would just urge you to compare and contrast page A28, which is the board's determination on this issue, and A, I believe it's 4622, which is the examiner. The examiner says with respect to patent owner's argument regarding Claim 11, the craft is monitoring the aggregation of devices. This is the a device versus group of devices point. Examiner disagrees. That's at A4622. The examiner says craft teaches a device. Page A28, craft does disclose tracking the aggregate time of more than one bus master as appellant argues. Absolutely clear that the board disagrees with what the examiner said on this score, and under in Ray Steppen and in Ray Latham and in Ray Kumar, and I am sure there are many other in rays that say the same thing. The board cannot affirm on a basis difference in what the examiner concluded. I see that I am way past my time. Yes, you are. This argument has been helpful. Thank you both. Thank you very much.